UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TIME SQUARE FOODS IMPORTS LLC,                       :
                                                     :
                          Plaintiff,                 :
                                                     :
          -v-                                        :
                                                     :
URSA PHILBIN, NICKY KALLIONGIS, and                  :
COMNEXIS, INC.,                                      :     12 Civ. 9101 (PAE)
                                                     :
                          Defendants.                :     OPINION & ORDER
------------------------------------------------------------------------X
URSA PHILBIN *derivatively on behalf of* MY SKINNY   :
GROUP LTD. *and on behalf of* SEENA FOODS, LTD.      :
*doing business as* MY SKINNY GROUP,                 :
                                                     :
                          Counterclaimant,           :
                                                     :
          -v-                                        :
                                                     :
TIME SQUARE FOODS IMPORTS LLC, EXIMP LTD.,:
ASHOK KUMAR VERMA, TARUN VERMA *a/k/a*               :
RIKKI VERMA, JATINDER S. DHALL *a/k/a* RICKY         :
SINGH *a/k/a* RICKY DHALL, and PRESTON TURCO,        :
                                                     :
                          Counterdefendants,         :
                                                     :
          and                                        :
                                                     :
MY SKINNY GROUP LTD. and SEENA FOODS LTD.            :
*doing business as* MY SKINNY GROUP,                 :
                                                     :
                          Nominal Counterdefendants.:
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

     Before the Court is a motion by plaintiff Time Square Foods Imports LLC ("Time Square"), to hold defendants Ursa Philbin ("Philbin"), Nicky Kalliongis ("Kalliongis"), and Comnexis, Inc. ("Comnexis") in civil contempt of court, due to their alleged violations of the consent judgment and injunction entered by the Court on March 6, 2014.  Time Square also

seeks a temporary restraining order, monetary damages, and attorneys' fees.  For the reasons that follow, Time Square's motion is denied in its entirety, save for one aspect of Time Square's contempt motion, on which the Court reserves judgment pending receipt of further evidence.

Separately, Philbin seeks leave to issue a subpoena for Time Square's banking records, to enable it to test whether Time Square defaulted on its obligation to pay Philbin $10,000 on May 6, 2014.  That application is granted.

## I.     Background[1]

On December 12, 2012, Time Square filed a Complaint, alleging that defendants were infringing on its trademarks MY SKINNY, MY SKINNY RICE, MY SKINNY PETS, and MY SKINNY PET TREATS.  Dkt. 1.  On March 25, 2013, defendant Philbin answered and filed a counterclaim, alleging that Time Square's trademarks were invalid.  Dkt. 5.  On April 19, 2013, an initial conference was held in the case; on April 22, 2013, the Court referred the case to Magistrate Judge Pitman to conduct a settlement conference.  Dkt. 8.

On June 7, 2013, a successful settlement conference was held.  The resulting settlement resolved all disputes between the parties pending in both state and federal court.  Time Square agreed to pay Philbin $100,000, spread over six installments, in exchange for Philbin and the other defendants' agreement to cede to Time Square all rights to the above trademarks.  *See* Dkt.

---

[1] The Court's account of the underlying facts of this case is drawn from:  the Declaration of Jatinder S. Dhall in Support of Plaintiff's Motion for Contempt ("Dhall Decl.") (Dkt. 49) and attached exhibits; the Declaration of Dennis Grossman in Support of Plaintiff's Motion for Contempt ("Grossman Decl.") (Dkt. 50) and attached exhibits; the Declaration of Ursa Philbin in Opposition to Plaintiff's Motion for Contempt ("Philbin Decl.") (Dkt. 53) and attached exhibits; the Declaration of Nicky Kalliongis in Opposition to Plaintiff's Motion for Contempt ("Kalliongis Decl.") (Dkt. 54) and attached exhibits; the Declaration of Marc Lebowitz in Opposition to Plaintiff's Motion for Contempt ("Lebowitz Decl.") (Dkt. 55) and attached exhibits; and the Reply Declaration of Dennis Grossman in Support of Plaintiff's Motion for Contempt ("Grossman Rep. Decl.") (Dkt. 57) and attached exhibits.

18 (Transcript, June 7, 2013). Defendants also agreed to have a consent judgment and injunction entered that would prevent them "from using the disputed marks and *anything confusingly similar.*" *Id.* at 2–3 (emphasis added). Defendants agreed that they would thus be enjoined from using not only MY SKINNY, SKINNY PETS, and MY SKINNY PETS, but also all confusingly similar trademarks on food products for both humans and pets. *Id.* at 5–6. The terms of the settlement agreement were recorded in Philbin's presence and on the record.

After the settlement conference, the parties exchanged drafts of the proposed consent judgment and injunction, but could not reach an agreement. Specifically, Philbin disputed Time Square's proposed paragraph 7, which would enjoin defendants from infringing on the trademark MY SKINNY, and all other marks "confusingly similar thereto including without limitation SKINNY, MY SKINNY, SKINNY RICE, MY SKINNY RICE, SKINNY PETS, MY SKINNY PETS, SKINNY PET TREATS, and MY SKINNY PET TREATS." Dkt. 20 Ex. 1 at 4. Defendants objected to the inclusion in this list of the mark SKINNY.

On August 19, 2013, Time Square filed a motion to vacate the conditional order of dismissal entered on July 18, 2013, and to execute its proposed consent judgment and injunction. Dkt. 20. On September 13, 2013, Philbin opposed the motion. Dkt. 23. On September 30, 2013, Time Square Foods filed a reply brief. Dkt. 24.

On January 14, 2014, Judge Pitman issued a Report and Recommendation, which recommended that Time Square's motion be granted for two reasons: (1) there was a meeting of the minds on the existence of a settlement between the parties; and (2) the mark SKINNY, when used with respect to food for humans or pets, is within the terms of the settlement to which defendants agreed. *See* Dkt. 25 ("Report"). Accordingly, Judge Pitman recommended that the

Court vacate the conditional order of dismissal entered on July 18, 2013 and enter the consent judgment and injunction proposed by Time Square. *Id.* at 12.

On February 10, 2014, the Court adopted Judge Pitman's Report in its entirety. Dkt. 29; *Time Square Foods Imports LLC v. Philbin*, No. 12 Civ. 9101 (PAE) (HBP), 2014 WL 521242 (S.D.N.Y. Feb. 10, 2014). Specifically, the Court agreed with the Report's conclusion that SKINNY was confusingly similar to the trademark MY SKINNY when used on the same or similar food products. Accordingly, the Court vacated the conditional order of dismissal entered on July 18, 2013, restored the case to the Court's docket, and directed the parties to submit a consent judgment and injunction consistent with the Court's ruling.

On March 6, 2014, the Court entered the consent judgment and injunction submitted by the parties. Dkt. 30 ("consent judgment"). In relevant part, the consent judgment gave Time Square the exclusive right to the trademarks at issue and enjoined all defendants from infringing, diluting, or using those trademarks. In return, Time Square agreed to pay Philbin a total of $100,000, divided into the following installments: $50,000 upon the entry of judgment, and five payments of $10,000 every 30 days thereafter. *Id.* ¶ 20. In addition, counter-defendant Jatinder Dhall ("Dhall") personally guaranteed this $100,000 payment. *Id.* Upon entry of the consent judgment, the Court closed the case.

Since then, the parties have not amicably implemented their settlement. Philbin has accused Time Square of failing to make timely payments; Time Square, in turn, has accused Philbin of various violations of the consent judgment.

In May 2014, Philbin moved for a judgment of default against Time Square due to its failure to pay the $10,000 owed on May 6, 2014; in response, Time Square claimed—through the

sworn declaration of Dhall—that it had sent check #111 (for $10,000), but that the check must have been lost in the mail.

On June 18, 2014, after each side submitted several letters, the Court denied Philbin's application for a judgment of default because, on the then-existing record, the Court could not "conclusively determine that Dhall did not send check #111." Dkt. 46.  The Court did, however, direct Time Square and/or Dhall to "hand-deliver another $10,000 check to Philbin's attorney by June 20, 2014" in order to satisfy the payment due on May 6, 2014.  *Id.*  Because Time Square had, by then, already indicated an intention to move for a contempt order against Philbin, the Court also determined that the best course was first to resolve Time Square's motion for a contempt order, and in the meantime, stay Time Square's requirement to pay Philbin the remaining $30,000.

On June 19, 2014, Time Square filed its contempt motion, Dkt. 48, along with an accompanying memorandum of law, Dkt. 51 ("Pl. Br."), and two supporting declarations, Dkt. 49–50.  On June 27, 2014, Philbin filed her opposition brief, Dkt. 56 ("Def. Br."), and three supporting declarations, Dkt. 53–55.  On July 1, 2014, Time Square submitted a reply brief.  Dkt. 58 ("Pl. Reply Br.").

## II.     Legal Standards

A contempt order is "a potent weapon . . . to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct[.]"  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citation omitted).  "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict."  *Id.*  More specifically, a party may only be held in civil contempt for failure to comply with a court order if:  "'(1) the order is clear and

unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Liberty Propane L.P. v. Feheley*, 522 F. App'x 38, 38–39 (2d Cir. 2013) (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)) (internal quotation marks omitted). "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed." *Id.* at 39.

In general, "[a] district court may not 'expand or contract the agreement of the parties as set forth in the consent decree, and the explicit language of the decree is given great weight.'" *King*, 65 F.3d at 1058 (quoting *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985)). Here, the consent judgment is the "sole source of the parties' rights" and, as such, the Court "may not impose obligations on a party that are not unambiguously mandated by the [consent judgment] itself." *Id.* (citations omitted). At the same time, however, because the consent judgment is a court-approved order, the Court "has broad equitable discretion" to enforce its obligations. *Id.*

## III. Discussion

### A. Time Square's Contempt Allegations

Time Square seeks a contempt order on the grounds that Philbin committed the following four violations of the consent judgment: (1) filing trademark applications for SKINNY GRAINS, SKINNY POTATO, and SKINNY MINTS; (2) placing allegedly infringing material on her personal Facebook page; (3) refusing to furnish logins and passwords to the three websites related to Time Square's trademarks; and (4) failing to return stock certificates in Seena Foods, Ltd., and My Skinny Group, Ltd.

In light of the legal standards described *supra*, Time Square's motion for a contempt order turns on three questions: (1) has Time Square established, by clear and convincing

6

evidence, that Philbin committed the acts alleged; (2) if so, has Time Square established that these acts violated the consent judgment entered on March 6, 2014; and (3) if so, did the defendants diligently attempt to comply with the consent judgment in a reasonable manner. The Court addresses, in turn, each of the four violations alleged by Time Square.

### 1. Philbin's Application for Three Trademarks

Time Square's first claim is that Philbin applied to register the following three trademarks—SKINNY POTATO, SKINNY MINTS, and SKINNY GRAINS—and that her failure to affirmatively withdraw these applications violated the consent judgment.

Philbin concedes that she applied to register these trademarks, but notes, accurately, that she did so well before the Court entered the consent judgment. The applications were submitted on August 3, 2013 for SKINNY MINTS, August 20, 2013 for SKINNY POTATO, and December 11, 2013 for SKINNY GRAINS. *See* Philbin Decl. Exs. A–C. All three applications were thus filed before Magistrate Judge Pitman issued his Report on January 14, 2014, which concluded, over Philbin's objection, that the trademark SKINNY was within the terms of the parties' settlement. The Court, in turn, adopted Judge Pitman's Report on February 10, 2014 and entered the consent judgment on March 6, 2014. The applications for all three trademarks were, therefore, filed several months before the Court entered the consent judgment.

That said, however, Time Square is correct that, upon entry of the consent judgment, Philbin was required to withdraw these trademark applications. Paragraph 7(b) of the consent judgment states that Philbin and the other defendants are enjoined from "using, employing, publishing and/or *claiming rights* to the trademark and/or trade name MY SKINNY—and to any or all trademarks and trade names confusingly similar thereto including without limitation the trademarks and/or trade names MY SKINNY, SKINNY, SKINNY RICE, MY SKINNY RICE,

7

SKINNY PETS, MY SKINNY PETS, SKINNY PET TREATS, and MY SKINNY PET TREATS." Consent Judgment ¶ 7(b) (emphasis added). Further, as the Court has held, SKINNY is confusingly similar to the trademark MY SKINNY when used on the same or similar food products, *see Time Square Foods Imports LLC*, 2014 WL 521242, at *3; it follows, then, that SKINNY MINTS, SKINNY POTATO, and SKINNY GRAINS are all also confusingly similar to Time Square's trademark. The consent judgment required Philbin and the other defendants to cease "claiming rights" in these three other trademarks and, as such, Philbin must officially withdraw or abandon her applications to register these marks.

The Court, however, denies Time Square's application to hold Philbin in civil contempt on this basis. In a practical sense, Philbin has already abandoned her applications for the trademarks at issue, which, as stated above, Philbin applied for before the Court conclusively held that SKINNY was confusingly similar to MY SKINNY. There is no evidence that, since entry of the consent judgment, Philbin ever tried to profit from, or to use, these three trademarks and, in her sworn declaration, Philbin states that she has abandoned, or will abandon, all three. *See* Philbin Decl. ¶¶ 14–16. Therefore, although Time Square has established that Philbin (1) applied for the infringing trademarks, and (2) has yet to formally abandon them, the Court concludes, on the third element required to support a contempt sanction, that Philbin's violation was not willful. Rather, it appears that Philbin attempted to comply with the consent judgment in a reasonable, if not optimal, manner—*i.e.*, by taking no affirmative steps to prosecute the trademarks after the consent judgment was entered in March 2014. To be sure, the Court now holds that the consent judgment requires Philbin to withdraw or abandon any claim to the trademarks SKINNY MINTS, SKINNY POTATO, and SKINNY GRAINS. But, on the

assembled record, the Court also concludes that her failure to do so, up to this point, has not been willful. Accordingly, Time Square's motion for a contempt order against Philbin is denied.

Philbin is, however, ordered to withdraw her three applications *immediately*, utilizing the procedures listed in the relevant regulation issued by the U.S. Patent and Trademark Office. *See* 37 C.F.R. § 2.68.

### 2. Philbin's Personal Facebook Page

Time Square's second claim is that Philbin's personal Facebook page violates the consent judgment, in that it recites that she was: "Former creator and partner of 'My Skinny' brands (My Skinny Rice & My Skinny Pet Treats) at My Skinny Group, LTD" in "New York, NY" from "Jan. 1, 2010 to May 1, 2013." Philbin Decl. Ex. G.

Philbin does not dispute that her personal Facebook page contains these statements. Time Square has, however, failed to establish that the statements violate the consent judgment. Time Square asserts, in a conclusory manner, that they violate paragraphs 7(a), 8, and 9. But paragraph 7(a) enjoins infringement in connection with the sale of food; paragraph 8 specifies that the injunction includes all forms of media and packaging; and paragraph 9 mandates the destruction of all media that previously used the trademark in connection with the sale of food. *See* Consent Judgment ¶¶ 7(a), 8–9. None of these provisions prohibits Philbin from listing a prior association with the "My Skinny" brand in the work experience section of her personal Facebook page. As stated above, "[a] district court may not expand or contract the agreement of the parties as set forth in the consent decree, and the *explicit language* of the decree is given great weight." *King*, 65 F.3d at 1058 (emphasis added). Here, the explicit language of the decree does not prohibit Philbin from listing "My Skinny" on her Facebook page. Accordingly, Time Square's motion to hold Philbin in contempt on that basis is denied.

9

### 3. Associated Website Logins and Passwords

Time Square's third claim is that Philbin violated paragraph 10 of the consent judgment by failing to disclose all "logins and passwords" to the websites related to Time Square's trademarks. Specifically, Time Square asserts that Philbin and defendant Kalliongis control (or controlled) the websites www.skinnyrice.com, www.skinnypets.com, and www.facebook.com/SkinnyRice, and that Philbin and Kalliongis have thus far refused to disclose the "logins and passwords" for these sites. Paragraph 10 of the consent judgment expressly states that the defendants are "ordered to relinquish and abandon and, if possible, to assign to [Time Square] the full and unconditional control of and access to all websites, web domains, web blogs, and media (including without limitation Facebook, Twitter, Tumbler, Linkedin, Googleplus, etc.) and all login and passwords thereto concerning the trademark and/or trade name MY SKINNY." Consent Judgment ¶ 10. Accordingly, there is no dispute that the consent judgment required defendants to relinquish and abandon these websites.

However, Time Square has failed to establish that Philbin or Kalliongis breached this duty. In fact, the evidence points the other way: It indicates that Philbin and Kalliongis repeatedly attempted, through their attorney, Marc Lebowitz ("Lebowitz"), to transfer control of the www.skinnyrice.com and www.skinnypets.com websites, but that Time Square and Dhall, through their attorney, Dennis Grossman ("Grossman"), refused to take the steps necessary to effectuate these transfers. Both www.skinnyrice.com and www.skinnypets.com were registered with Ivoy.com, a domain name registration and web hosting company. *See* Philbin Decl. ¶ 26; Kalliongis Decl. ¶ 8. On May 7, 2010, Lebowitz sent Grossman the following e-mail:

> I'm putting this in writing again –
>
> You need to get an account on Ivoy.com, then I believe we can give them ownership very fast, maybe even same day. This would be for skinnyrice.com, and

10

>skinnypets.com.  I understand skinnyrice.com expires today.  If you are truly going finally [sic] provide information for these transfers I will include you on an email with Mr. Kalliongis to expedite.  And, as you know, as of yesterday your client is in default on two (2) payments.

Lebowitz Decl. Ex. B.  On May 9, 2010, Lebowitz wrote Grossman again:  "I take you [sic] lack of response to mean you are not interested in domain transfers and that you confirmed that your clients have the passwords."  *Id.*  On May 9, 2010, Grossman responded to Lebowitz:

>Not so.  My clients do not have the "domain passwords."  Nor did you or your clients ever provide them.  Your informing us of the procedure for such transfer in the afternoon of the last day before expiration ("expires today" in your e-mail below) constitutes playing games and is quite disingenuous.
>
>Without prejudice to plaintiff's rights concerning your clients' contempts, we demand that your clients provide the logins, passwords and all other information for all transfers of domains, websites, social media, etc.
>
>Neither you nor your clients have done so.
>
>Under the judgment and injunction, your clients were required to do this months ago.  Plaintiff demands that your clients provide the information immediately, without prejudice to plaintiff's rights concerning your clients' numerous persistent contempts.
>
>Plaintiff reserves all rights including without limitation all rights concerning your clients' persistent and numerous contempts, including rights to damages and attorneys [sic] fees as an offset against payments and/or as independent bases for recovery.

*Id.*  On May 13, 2014, Lebowitz responded to Grossman:

>Dennis:  I don't think you understand the process, so let me try again.  Provide an email address of account at Ivoy and the account number and we will transfer whichever domains are not irretrievably expired.  As I've told you several times now, skinnyrice.com is likely history so I suggest you try to register that domain on your own as well as providing transfer information.  Skinnypets.com should still be able to be transferred.  Your clients have the social media passwords/logins etc.

*Id.*  The conclusion the Court draws from this e-mail exchange is that Philbin and Kalliongis, through their counsel, Lebowitz, attempted to transfer ownership of the websites to Time Square, but that Time Square's counsel, Grossman, for whatever reason, refused to learn how to make

11

such a transfer and was unwilling to listen when Lebowitz tried to explain the process.  Until Time Square opened an account with a domain provider, such as Ivoy, it was literally not possible to transfer ownership of www.skinnyrice.com and www.skinnypets.com.  *See* Philbin Decl. ¶¶ 27–30; Kalliongis Decl. ¶¶ 17–21.

Because of the passage of time—which appears to derive from Grossman's needlessly confrontational litigation posture—www.skinnyrice.com is no longer owned by Philbin, and thus, Time Square may now, if it wishes, re-register the domain name itself.  Philbin Decl. ¶ 31; *id.* Ex. I (showing a blank page associated with www.skinnyrice.com).  The same goes for www.facebook.com/SkinnyRice, which was previously associated with Philbin's personal Facebook account, but which was unpublished and deleted "in early April 2014, after entry of the Consent Judgment."  *Id.* ¶ 34; *id.* Ex. J.  Because that page no longer exists, Time Square is free to recreate such a page on Facebook.  As for www.skinnypets.com, Kalliongis states that she "remain[s] ready and willing to transfer" that domain to Time Square; in the interim, however, it remains merely a "parked domain name" that "direct[s] browsers to a dummy web site."  Kalliongis Decl. ¶¶ 22–23.  Finally, Kalliongis attests that there is no other "infringing Social Media."  *Id.* ¶ 25; *see also id.* ¶¶ 26–27 (attesting that there is no Facebook page referencing SKINNYPETS, no twitter account, no site on tumbler, google+, or any other social media platform).

Accordingly, the Court denies Time Square's motion to hold Philbin and Kalliongis in contempt based on their alleged failure to transfer the three websites identified above because, on the evidence presented, neither defendant breached the consent judgment.  To the contrary, the Court concludes that it was the fault of Time Square and Grossman that these websites were not transferred.  Nonetheless, if Time Square and Dhall are serious about seeking ownership of

www.skinnypets.com, then they should work collegially with Kalliongis and Lebowitz to transfer ownership of that domain name. The Court directs and expects all parties to work together productively to accomplish this end.

### 4. Return of Stock Certificates

Time Square's fourth claim is that Philbin has violated the consent judgment by failing to return stock certificates in Seena Foods, Ltd., and My Skinny Group, Ltd. Paragraph 18 directs Philbin to "return to SEENA FOODS LTD. all stock certificates purporting to show her ownership interest in SEENA FOODS LTD"; Paragraph 19 directs Philbin to "return to MY SKINNY GROUP LTD. all stock certificates purporting to show her ownership interest in MY SKINNY GROUP LTD." Consent Judgment ¶¶ 18, 19.

It is uncontested that Philbin has not provided Time Square with these stock certificates. Philbin attests in her sworn declaration that she no longer has the certificates, *see* Philbin Decl. ¶ 37; her lawyer, Lebowitz, explains that "Philbin's prior lawyer misplaced the certificate[s]," Lebowitz Decl. ¶ 12. But Time Square objects to the latter statement as hearsay, *see* Dkt. 58, noting that if the prior lawyer misplaced the certificate, he or she should provide a sworn statement directly.

As to this issue, Time Square is correct that Philbin has not complied with the consent judgment: That judgment expressly required Philbin to return the stock certificates; and by entering into that judgment, Philbin implicitly represented that she was then capable of doing so. Philbin has, however, not done so. Conceivably, Philbin may be able to establish through competent evidence that she attempted to comply with the consent judgment but that, through no fault of her own, she no longer personally possesses or has constructive possession of the certificates. For example, competent evidence may establish that Philbin transferred them to her

13

prior lawyer for transfer to Time Square, and that they were inadvertently lost or destroyed while in that lawyer's custody.  If so, Philbin's compliance with paragraphs 18 and 19 might be excused; a contempt sanction for willful non-compliance might then clearly be unavailable.  But the factual record, at this point, is insufficient to establish what became of the stock certificates since the execution of the consent judgment.  Philbin is therefore directed to produce, by Monday, July 28, 2014, a sworn statement from her prior lawyer explaining the chain of custody of the certificates, and stating, providing that such is truthful, that neither that lawyer nor Philbin any longer possesses them.  Upon receipt of this statement, the Court will resolve Time Square's application for a contempt order based on Philbin's failure to transfer the stock certificates.  For the time being, the Court reserves judgment on this issue.

      **B.**      **Applications for Attorneys' Fees**

Both parties seek attorneys' fees in connection with making, and responding to, this contempt motion.

Time Square asserts that it is entitled to attorneys' fees because Philbin's violations were willful.  *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("[I]t is appropriate for the court . . . to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful."); *King*, 65 F.3d at 1063 ("In order to award fees, the district court had to find that [the] contempt was willful.").  As stated above, however, Philbin's violations of the consent judgment were not willful.  Accordingly, Time Square's application for attorneys' fees is denied.

Philbin seeks attorneys' fees on the basis that Time Square has engaged in bad-faith conduct.  *See* Def. Br. at 6 (citing *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("A court has the inherent power to supervise and control its own proceedings and to sanction

counsel or a litigant for bad-faith conduct."). But Time Square's allegations were not vexatious or baseless. On the contrary, the Court has agreed with Time Square that Philbin must: (1) officially withdraw her applications for the three trademarks barred by the consent judgment, and (2) supplement the record to justify her failure to return stock certificates in Seena Foods, Ltd., and My Skinny Group, Ltd. Therefore, although the Court has not granted Time Square's application for a contempt judgment, the Court by no stretch finds that Time Square acted in bad faith in making such an application. Accordingly, Philbin's application for attorneys' fees is denied.

### C. Philbin's Request for a Subpoena

Finally, Philbin seeks leave to issue a subpoena to Habib Bank, where Time Square holds a checking account.

By way of relevant background, Time Square previously claimed, in response to Philbin's motion for a default judgment, that it sent two $10,000 checks to Philbin to satisfy the April and May 2014 payments. Philbin received check #112, but check #111 was, purportedly, lost in the mail. Philbin accuses Time Square of never having sent check #111—she believes that Time Square actually used check #111 for another purpose. In support of this thesis, Philbin relies primarily on the Account Statement provided to the Court by Dhall on June 6, 2014, *see* Dkt. 43, which, as Philbin notes, lists checks #101 and #102, but omits the check numbers for a $6,500 payment on May 6, 2014 and the $10,000 payment on May 22, 2014 (which was check #112), *see* Dkt. 61 Ex. B. Philbin also notes that the front-face images of the checks cleared in May include checks #101, #102, and #112, but does not include an image of the $6,500 check that cleared on May 6, 2014. Dkt. 61 Ex. C. Based on this evidence, Philbin accuses Time

Square of using check #111 to make the $6,500 payment and then covering up that fact in its submissions to the Court.

The Court previously denied Philbin's application for a judgment of default because, on the then-existing record, the Court could not "conclusively determine that Dhall did not send check #111." Dkt. 46. Now, to supplement the record, Philbin seeks permission to serve a subpoena on Habib Bank. That subpoena would, as to Time Square's checking account, direct Habib Bank to:

> produce (1) front and back image of check #111; (2) front and back image of check presented for payment on 5/06 in the amount of $6,500; (3) record of any stop payment orders for check #111; and (4) checking account statement for month ending 5/30/2014.

*Id.* Ex. D.

Time Square opposes Philbin's application to issue this subpoena. On July 9, 2014, Time Square submitted to the Court, as further evidence, a letter titled, "Plaintiff's bank confirmation that plaintiff's check #111 was never presented for payment." *See* Dkt. 60. That letter, which is on Habib Bank letterhead and dated July 9, 2014, represents that check #111 "has never been presented for payment till date." Dkt. 60 Ex. A. As Philbin notes, however, this letter was "unsworn, not notarized, and not made upon personal knowledge." Dkt. 61.

In light of the incomplete information thus far presented to the Court regarding whether Time Square sent, as it claims, check #111 to satisfy its May 2014 payment obligation, the Court authorizes Philbin to issue the above subpoena to Habib Bank. To be sure, the bank's records may well confirm Time Square's claim that check #111 was not presented for payment, but Philbin is entitled to proof of that fact, not merely an unsubstantiated letter so stating. And although Time Square asserts that this subpoena would impose "extra expense and work on plaintiff at this late date," it is unclear why, and does not logically follow, that this task will

16

impose significant work or cost on Time Square, when it is Philbin who will be responsible for serving the subpoena. And Philbin is correct that this limited subpoena will establish, conclusively, whether Time Square sent check #111 to Philbin to satisfy the required $10,000 payment, or whether, as Philbin theorizes but Time Square disputes, the check was used for some other purpose and presented for payment. If the records produced reveal that check #111 was used for a different purpose, contrary to Time Square's claims, the Court would, at that time, be willing to reconsider its denial of Philbin's previous motion for a default judgment and any other appropriate relief.

Service of the subpoena proposed by Philbin is therefore approved.[2]

## CONCLUSION

For the foregoing reasons, the Court denies Time Square's motion to hold Philbin, Kalliongis, and Comnexis in civil contempt of Court, except that the Court reserves judgment to the extent the motion relates to the failure to transfer the Seena Foods, Ltd., and My Skinny Group, Ltd. stock certificates. However, Philbin is directed forthwith to withdraw her applications for the three trademarks at issue, and to supplement the record regarding her possession of the stock certificates. Separately, Philbin's application to subpoena Time Square's banking records is granted.

---

[2] On July 20, 2014, Time Square submitted a letter, stating that it "withdraws its objection to the proposed subpoena and respectfully requests [three] conditions set forth in the attached proposed order." Dkt. 65. The Court grants Time Square's request in part. Philbin's counsel, Lebowitz, is directed to serve the bank with the subpoena by July 30, 2014, and to send the bank's response, by e-mail, to the Court and to Time Square's counsel, Grossman, no later than five days upon receipt. Other than disclosing this information to the Court and Grossman, Lebowitz is directed to keep the bank's response confidential.

Time Square is directed to pay Philbin, forthwith, the $20,000 that Philbin is owed, *i.e.*, as a result of Time Square's duty to pay Philbin $10,000 on both June 6, 2014 and July 6, 2014. Time Square is also directed to make the final payment of $10,000 on August 6, 2014.

The Clerk of Court is respectfully directed to terminate the motion at docket number 48.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 21, 2014
      New York, New York